# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITTY S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 21-00390-JEM <br><br> AMENDED MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On March 4, 2021, Kitty S.[1] ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. (Dkt. 1.) The Commissioner filed an Answer on September 30, 2021. (Dkt. 18.) On January 14, 2022, the parties filed a Joint Stipulation ("JS"). (Dkt. 22.) The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"),

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the Court reverses the Commissioner's decision and remands this case for further proceedings in accordance with this Amended Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff is a 65 year-old female who applied for Social Security Disability Insurance benefits on October 4, 2017, alleging disability beginning October 1, 2017. (AR 197.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date. (AR 20.)

Plaintiff's claim was denied initially on February 7, 2018, and on reconsideration on May 31, 2018. (AR 18.) Plaintiff filed a timely request for hearing, and on September 12, 2019, Administrative Law Judge ("ALJ") Derek Johnson held a hearing in Moreno Valley, California. (AR 18.) Plaintiff appeared and testified at the hearing and was represented by counsel, who appeared telephonically. (AR 18) Vocational expert ("VE") David A. Rinehart also appeared at the hearing. (AR 18.)

The ALJ issued an unfavorable decision on October 8, 2019. (AR 18-28.) The Appeals Council denied review on July 17, 2020. (AR 5-7.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ has properly considered the relevant medical evidence of record in assessing Plaintiff's residual functional capacity.
2. Whether the ALJ has properly considered Plaintiff's subjective statements of record and testimony under oath regarding her impairments, symptoms, and limitations in the assessment of Plaintiff's residual functional capacity.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's decision is supported by substantial evidence and free of legal error. Coleman v. Saul, 979 F.3d 751, 755 (9th Cir. 2020); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996);

see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R.

Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2) ; Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 1520(a)(4)(v). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date. (AR 20.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairment: lumbar spine degenerative disc disease. (AR 20-24.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 24.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and she may tolerate no exposure to extreme cold, vibration, or hazards such as unprotected heights and moving mechanical machinery. (AR 24-27.) In determining the above RFC, the ALJ made a determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are inconsistent with the residual functional capacity assessment herein. (AR 25.)

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a customer service representative of cable and internet, and a care provider, home healthcare. (AR 27-28.)

Consequently, the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act from the alleged onset date of October 1, 2017, through the date of decision of October 8, 2019. (AR 28.)

## DISCUSSION

The ALJ assessed Plaintiff with a light work RFC with no severe mental limitations. Plaintiff challenges the ALJ's RFC, contending that it failed to adequately consider Plaintiff's mental and physical limitations and subjective symptoms. The Court agrees in regard to Plaintiff's mental limitations. The ALJ's RFC lacks the support of substantial evidence.

### I. THE ALJ FAILED TO PROPERLY CONSIDER THE MEDICAL EVIDENCE

Plaintiff contends that the ALJ did not adequately consider the medical evidence in formulating Plaintiff's RFC. The Court agrees in regard to Plaintiff's mental limitations.

### A. Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 404.1527(d). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 466 F.3d at 883.

The Commissioner issued new regulations governing how to evaluate medical opinions on March 27, 2017. Revisions To Rules Regarding The Evaluation Of Medical Evidence, 82 Fed. Reg. 15, 132 (March 27, 2017). Under the new regulations, the Commissioner is to evaluate medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(a),(b)2,(c)(1)-(5). ALJs are to explain how they considered the factors of supportability and consistency. Id. These are the most important factors in determining the persuasiveness of a medical opinion. Id. The new regulations eliminated the "treating source" rule and any hierarchy of medical opinions. Id.; see also Fed. Reg. at 5853. The Ninth Circuit, moreover, has held that the new regulations displace prior case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a physician's opinion. Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022.)

### B. The ALJ Did Not Adequately Consider Plaintiff's Mental Impairments

The ALJ found that Plaintiff has the medically determinable severe impairment of lumbar spine degenerative disc disease but no severe mental impairment. (AR 20.) The ALJ did find that Plaintiff has the medically determinable mental impairments of anxiety and affective disorders. (AR 21.) The ALJ, however, also found that these impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and thus are not severe. (AR 21.) In support of that conclusion, the ALJ relied on step two findings of only mild mental limitations, lack of mental health care, absence of symptoms or objective findings, and the medical opinions of State reviewing physicians and the consulting examiner. (JS 12.)

The ALJ, however, failed to adequately consider Plaintiff's mild mental limitations in formulating Plaintiff's RFC. This was error.

### 1. Mild Step Two Findings

At step two of the sequential process, the ALJ applied the psychiatric review technique for rating the severity of four broad areas of mental functioning known as the "paragraph B" criteria. (AR 22.) 20 C.F.R. § 404.1520a. If a claimant has no more than mild limitations in the paragraph B criteria, a claimant's impairment will be found nonsevere. 20 C.F.R. § 404.1520a(d)(1). Here, after reviewing the medical record the ALJ found that Plaintiff had only mild limitations in (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (AR 22.) Considerable evidence supports the ALJ's mild step two findings.

First, the ALJ properly considered Plaintiff's lack of significant mental health care during the relevant time period. (AR 21.) Plaintiff was seen by a mental health specialist who prescribed psychotropic medications well prior to the alleged onset date. (AR 21.) The ALJ, however, found that there was no evidence Plaintiff received any treatment with a mental health specialist during the relevant adjudication period. (AR 21.) Nor was there any evidence of involuntary hospitalizations or episodes of decompensation that would suggest her mental impairments more than minimally affected her ability to perform work-related activities. (AR 23.) Plaintiff did continue to receive psychotropic medication from Plaintiff's treating physician, Dr. Ahsan Qazi. (AR 21.) She did not, however, seek treatment with a mental health specialist, which indicated to the ALJ that conservative treatment with medication was effective in managing her symptoms. (AR 22-23.) Impairments that can be controlled with medication are not disabling. Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ properly considered the minimal treatment Plaintiff received for her mental impairments. See Malloy v. Colvin, 664 F. App'x 638, 641 (9th Cir. 2016) (claimant's assertion of a severe mental impairment rejected because evidence showed "minimal and inconsistent treatment").

Second, the ALJ considered the lack of mental health symptoms or objective findings in the treatment records. (AR 21.) Dr. Qazi did not document any objective psychiatric findings in

his examinations which repeatedly noted Plaintiff was in no acute distress. (AR 21.) The ALJ found that the medical evidence demonstrated that Plaintiff's symptoms "remained generally stable at no worse than a mild level with appropriate conservative treatment and the absence of more significant positive objective clinical or diagnostic findings pertaining to a mental impairment." (AR 23.)

Third, medical opinion evidence also establishes that Plaintiff's mental impairments are not severe. (AR 23-24.) On February 7, 2018, State reviewing physician Dr. H. Hurwitz opined that Plaintiff did not have severe impairment. (AR 23, 65.) On May 27, 2018, State reviewing physician Dr. Robert Liss opined that there was "insufficient objective support for more than mild limitations." (AR 23, 76.) Their opinions also are consistent with the mild findings in the January 23, 2018 report of consulting examiner Dr. Rashin D'Angelo. (AR 21-22, 23-24, 664-668.) Dr. D'Angelo found that Plaintiff had mild difficulties interacting with others, maintaining composure, maintaining attention, with concentration, persistence, and pace, accepting instructions, and interacting with co-workers and the public. (AR 667-668.)

Dr. D'Angelo, however, assessed two moderate limitations. He stated Plaintiff "would have moderate difficulties to be able to handle the usual stresses, changes and demands of gainful employment." (AR 23, 668.) The ALJ found this moderate limitation unpersuasive, unsupported, and inconsistent with the record as a whole. (AR 23.) Dr. D'Angelo's determination was based on a one-time examination of Plaintiff with no review of any medical records. (AR 23, 664.) The ALJ found Dr. D'Angelo's moderate limitation to be inconsistent with the longitudinal medical record. (AR 23.) The ALJ also found that the record does not contain supportive objective findings. (AR 23.) Both State reviewing physicians considered Dr. D'Angelo's opinion but nonetheless found that Plaintiff's mental limitations were not severe. (AR 23-24.) Plaintiff argues that the ALJ did not adequately consider Dr. D'Angelo's opinion and claims the longitudinal record supports his assessment. Plaintiff, however, relies solely on Workers' Compensation records that predated Plaintiff's alleged disability onset date by several years. (AR 21, 306-339, 351-372, 378-398, 402-403, 408-455.) Plaintiff cites no evidence

from the relevant time period to support her argument that Dr. D'Angelo's opinion was consistent with the record.

Dr. D'Angelo also opined that Plaintiff "would have moderate limitations completing a normal workday or work week due to her mental condition." (AR 668.) Plaintiff criticizes the ALJ for failing to discuss this limitation but the Commissioner contends, correctly, that any error was harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless when it is "inconsequential to the ultimate nondisability determination"), quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The ALJ specifically endorsed the opinion of State reviewing physician Dr. Liss who rejected Dr. D'Angelo's moderate limitations, noting that there was "insufficient objective support for more than mild limitations." (AR 23, 76.) The ALJ found this opinion persuasive because it was consistent with the record as a whole, with Plaintiff's mild stable symptoms, with appropriate conservative treatment and the absence of more significant findings. The ALJ, moreover, adequately explained why the evidence of record does not support moderate mental limitations, including Dr. D'Angelo's largely unremarkable findings, the lack of mental health treatment consistent with moderate limitations and the lack of any findings or symptoms in treatment records. (JS 18-29.) (AR 23.) The ALJ also found that in evaluating the paragraph B criteria the evidence showed only mild limitation in Plaintiff's ability to adapt or manage oneself, including her ability to perform in a work setting "independently, appropriately, effectively, and on a sustained basis." (AR 23.) (Emphasis added.) The ALJ's decision sufficiently explained why moderate limitations were unwarranted.

The ALJ's determination that Dr. D'Angelo's moderate mental limitations lack supportability and consistency with the record is supported by substantial evidence.

### 2. Failure To Consider Mental Limitations In RFC Determination

The ALJ states in Finding 3 that the RFC reflects the degree of limitation found in the mild step two paragraph B findings. (AR 24.) The ALJ does not discuss these mild limitations thereafter in the decision, in particular in formulating Plaintiff's RFC in Finding 5. This was error. In Hutton v. Astrue, 491 F. App'x 850, 851 (9th Cir. 2012), the ALJ found that a mild limitation in concentration, persistence, and pace due to the claimant's PTSD was nonsevere.

9

The Ninth Circuit found error because, regardless of severity, the ALJ was required to consider claimant's PTSD in determining his RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are 'not severe'"); see also 20 C.F.R. § 404.1545(e). SSR 96-8p further provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

(Emphasis added.) (AR 24.)

The Commissioner argues that Plaintiff's nonsevere impairments do not require RFC limitations, citing Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("[c]onsideration of the limiting effects of all impairments does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the nonsevere impairment does not cause a significant limitation in the Plaintiff's ability to work"). Medlock, however, goes on to say: "Provided the ALJ does not rely on boilerplate language, but actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment, the ALJ has not committed legal error." Id. Finding that the ALJ thoroughly considered Plaintiff's mild nonsevere limitations at step four, Medlock distinguished Hutton because in Hutton the ALJ failed to even consider Plaintiff's mild mental impairment at step four. See also Gates v. Berryhill, 2017 WL 2174401, at *2-3 (C.D. Cal. May 16, 2017) (error because no consideration of mild limitation in determining RFC at step four).

Here, the Commissioner did not address Hutton or Gates, both cited by Plaintiff. The Commissioner instead cited Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007), which the above cases have distinguished because it did not address whether an ALJ must consider mild mental limitations in his or her RFC, only whether a severity determination at step two is dispositive of a step five determination of alternate work. See Gates, 2017 WL 2174401, at *3.

This case falls squarely under Hutton. The ALJ found multiple mild limitations at step two. (AR 21-22.) Based on these mild limitations, the ALJ determined that Plaintiff's mental impairments are nonsevere. (AR 22.) The ALJ, however, discusses these limitations only within Finding No. 3 (severity) of the decision. There is no discussion or reasoned consideration of Plaintiff's depression in Finding No. 5 (RFC). In Finding 3, the ALJ offered only boilerplate language that the RFC "reflects" the degree of limitation found in the paragraph B analysis. (AR 24.) There also is no discussion in Finding No. 5 of the impact of Plaintiff's nonsevere mental impairments in combination with the limitations resulting from other impairments.

The ALJ plainly erred. The error, moreover, was "not inconsequential to the ultimate nondisability determination" and was not harmless. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). As in Gates, 2017 WL 2174401, at *3, "[o]n the present record, it cannot be determined what would have happened had the ALJ considered Plaintiff's mild [mental limitations] when assessing the RFC or how the VE would have testified had [those limitations] been include[d] in the hypothetical question." More specifically, the vocational examiner testified that if an individual were limited to simple routine tasks in a low stress work setting with few changes and no rapid pace assembly line work, she would be incapable of performing her past occupations. (AR 38.)

The ALJ did not adequately consider Plaintiff's mental limitations in determining Plaintiff's RFC. The ALJ's RFC lacks the support of substantial evidence.

///

///

///

### C. The ALJ Properly Considered Plaintiff's Physical Impairment

The ALJ found that Plaintiff has the medically determinable severe impairment of lumbar spine degenerative disc disease. (AR 20.) Notwithstanding that impairment, the ALJ determined that Plaintiff can perform a reduced range of light work. (AR 24.)

Plaintiff challenges the ALJ's light work RFC. She claims she cannot work because of low back pain. (AR 25.) She claims she cannot sit more than an hour in an eight hour workday, can stand for less than an hour and cannot walk more than an hour, and cannot lift or carry any weight. (AR 25.) She also claims to suffer medication side effects. (AR 25.)

The ALJ found the medical record does not support her claim that her back pain precludes her from working. (AR 25.) Plaintiff received treatment from Dr. Qazi, but his treatment records were unremarkable as they showed only longitudinal evidence of lumbosacral tenderness. (AR 25.) Examinations showed no evidence of diminished range of motion, antalgic gait, radiculopathy symptoms, positive straight leg raising, diminished motor strength, or positive diagnostic findings of significant degenerative changes in the spine. (AR 25.) Treatment records indicate that Plaintiff received routine, conservative treatment. (AR 26.) Treatment records do not indicate any medication side effects. (AR 25-26.) There was no aggressive treatment or even a referral to an orthopedic specialist. (AR 26.)

The ALJ found persuasive the State agency physicians' light work RFC. (AR 27.) Dr. G. Spellman found that Plaintiff could perform light work with postural limitations. (AR 27, 66-67.) Dr. Patty Rowley found Plaintiff could perform light work with no other limitations. (AR 78-79.) The ALJ also noted that no medical source endorsed greater physical limitations than imposed in the ALJ's RFC. (AR 27.)

Plaintiff contends that the ALJ erred by failing to have Plaintiff's lumbar spinal condition evaluated by a consulting orthopedic examiner or to obtain radiology reports. Plaintiff asserts that the ALJ failed to develop the record. The Court disagrees.

Plaintiff has the burden to prove disability. 20 C.F.R. § 404.1512(a). An ALJ's duty to develop the record is triggered only where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Ford v. Saul, 950 F.3d 1141, 1156

(9th Cir. 2020). As already demonstrated above, Dr. Qazi's treatment records documented lumbosacral tenderness but were otherwise unremarkable. (AR 25-27.) Dr. Qazi did not document significant signs, symptoms, or findings related to Plaintiff's lumbosacral impairments. (AR 25-27.) Dr. Qazi did not prescribe aggressive treatment or refer Plaintiff to an orthopedic specialist. (AR 27.) There was no evidence of positive diagnostic findings. (AR 25-27.) Plaintiff received only routine, conservative medication treatment. (AR 26.) There was no evidence of worsening symptoms. (AR 27.)

Plaintiff speculates that Dr. Qazi's poor record keeping was the reason the record did not support her claim of greater physical limitations, but claimants could make that assertion in every case where evidence supporting disability is lacking. Here, the ALJ made the alternative finding that Plaintiff's symptoms were "generally well controlled with conservative medication treatment, as her treating physician Dr. Qazi, did not prescribe any more aggressive treatment, such as physical therapy or refer the Claimant to an orthopedic specialist." (AR 27.) The record here is neither ambiguous nor inadequate to evaluate Plaintiff's claim. Plaintiff's disagreement with the ALJ's findings does not establish any ambiguity or inadequacy in the record.

The ALJ, moreover, has the responsibility to resolve conflicts in the medical evidence and ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

The ALJ properly considered the medical evidence in formulating Plaintiff's physical RFC.

**II.  THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM ALLEGATIONS**

Plaintiff contends that the ALJ erred in discounting her subjective symptoms. The Court disagrees.

### A. Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 857; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

### B. Analysis

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 25.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "inconsistent" with the RFC. (AR 25.) Because the ALJ did not make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations. Smolen, 80 F.3d at 1283-84; Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The ALJ did so.

First, the ALJ found that Plaintiff's subjective symptom testimony is inconsistent with the objective medical evidence summarized above. (AR 21, 25.) An ALJ is permitted to consider

whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's subjective symptom allegations. Burch, 400 F.3d at 680-81. Here, Plaintiff's mental limitations were mild and nonsevere as noted above. Physically, Dr. Qazi's treatment records were "generally unremarkable." (AR 25.) Examinations showed no evidence of diminished range of motion, antalgic gait, radiculopathy symptoms or diminished motor strength. (AR 25.) There were no positive diagnostic findings or significant degenerative changes in Plaintiff's spine. (AR 25.) State agency physicians opined Plaintiff can perform light work. (AR 27.) No medical source endorses the extent of Plaintiff's alleged physical functional limitations. (AR 26, 27.)

Second, the ALJ found that Plaintiff has received conservative treatment for her mild mental limitations (AR 23) and routine conservative medication treatment for her lumbosacral tenderness. (AR 26.) An ALJ may consider conservative treatment in evaluating subjective symptom allegations. Tommasetti, 533 F.3d at 1039. The ALJ also found that Plaintiff's medication treatments were effective in controlling her symptoms. (AR 23, 26, 27.) Warre, 439 F.3d at 1006 (impairments that can be controlled effectively with medication are not disabling).

Third, an ALJ may consider inconsistencies in a claimant's statements in evaluating subjective symptoms. Light v. Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997); Thomas, 278 F.3d at 958-59. Here, the record does not support Plaintiff's claims of medication side effects. Her treating provider did not document any side effects or change in her medications or prescription strength. (AR 25-26.) See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (because plaintiff did not report side effects, ALJ rejected such limitations). Additionally, Plaintiff alleges excessive sleepiness from the medications but also had alleged sleep difficulties for which she was prescribed Ambien. (AR 26.)

Plaintiff disagrees with the ALJ's interpretation of the evidence, but again it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. Rollins, 261 F.3d at 857; see also Thomas, 278 F.3d at

954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

The ALJ discounted Plaintiff's subjective symptom allegations for clear and convincing reasons supported by substantial evidence.

\* \* \*

The ALJ's nondisability determination is not supported by substantial evidence or free of legal error.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the ALJ decision and remanding this case for further proceedings in accordance with this Amended Memorandum Opinion and Order and with law.

DATED: June 13, 2022

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE